## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TURAN PETROLEUM, INC., a Delaware corporation, <u>et al.</u>, <br><br> Plaintiffs, <br><br> and <br><br> TURAN PETROLEUM, INC., a Nevada Corporation, <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> MINISTRY OF OIL AND GAS OF KAZAKHSTAN, <u>et al.</u>, <br><br> Defendants. | Civil Action No. 10-2102 (RBW) |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Turan Petroleum, Inc. (a Delaware corporation), Energyfund, Inc., and Trustees for Trek Resources, Inc. (collectively, the "plaintiffs"), bring this civil action seeking compensatory and punitive damages against the Ministry of Oil and Gas of Kazakhstan (the "Ministry") and Does from 1 to 100,[1] pursuant to the Foreign Sovereign Immunities Act

---

[1] The body of the Complaint contains no allegations concerning unidentified defendants "Does from 1 to 100;" rather, these defendants are named only in the case caption.  <u>See</u> Complaint ("Compl.") at 1.  Because Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader[s are] entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (second alteration in original), a court can <u>sua sponte</u> dismiss a complaint for failure to state a claim if "'taking all the material allegations of the complaint as admitted and construing them in the plaintiff[s'] favor,' the court determines that the plaintiff[s'] complaint could not possibly entitle [them] to relief," <u>Epps v. U.S. Capitol Police Bd.</u>, 719 F. Supp. 2d 7, 12 (D.D.C. 2010) (quoting <u>Razzoli v. Fed. Bureau of Prisons</u>, 230 F.3d 371, 373–74 (D.C. Cir. 2000)).  "Lacking any factual allegations relating to [Does from 1 to 100], [the plaintiffs'] Complaint does not m[e]et Rule 8(a)'s requirements, and therefore dismissal is appropriate as to th[ese] defendant[s]."  <u>Nolan v. Shulman, Rogers, Gandal, Pordy & Ecker, P.A.</u>, 270 F. Supp. 3d 167, 172 (D.D.C. 2017); <u>see also</u> <u>Hale v. Fed. Nat'l Mortg. Ass'n</u>, Civ. Action No. 83-2902, 1984 WL 48918, at *3 (D.D.C. Feb. 10, 1984) (finding that the plaintiff "failed to comply
(continued . . .)

("FSIA"), 28 U.S.C. § 1605 (2018), alleging breach of contract, violation of the plaintiffs' rights

under the Treaty Between the United States of America and the Republic of Kazakhstan

Concerning the Reciprocal Encouragement and Protection of Investment (the "Bilateral

Investment Treaty"), breach of fiduciary duties, unjust enrichment, misrepresentation,

negligence, and also seeking declaratory relief.  See Complaint ("Compl.") ¶¶ 6, 87–123.  On

August 15, 2011, the Court provisionally granted a motion to intervene nunc pro tunc, filed by

Turan Petroleum, Inc. (a Nevada corporation) ("Turan Nevada"), for the sole purpose of

allowing it to file a motion to dismiss.  See Order at 1 (Aug. 15, 2011), ECF No. 36.  The

subjects of this Memorandum Opinion are (1) Intervenor Plaintiff Turan Petroleum, Inc.'s

Motion To Dismiss Pursuant to Fed.[ ]R.[ ]Civ.[ ]P. 12(b)(1), 12(b)(3), and 12(b)(6) ("Int. Pl.'s

Mot."), ECF No. 35; (2) the Plaintiffs' Motion to File Supplemental Complaint Under Rule 15(d)

("Pls.' 1st Mot. to Supp. Compl."), ECF No. 55; (3) the Plaintiffs' Motion to Consolidate

Considerations of Briefing on Motion to Dismiss, Brought by Turan Petroleum, Inc. (Nevada),

and on Plaintiffs' Motion to File Supplemental Complaint ("Pls.' Mot. to Consolidate"), ECF

No. 60; (4) the Plaintiffs' Motion to Amend and Supplement Complaint ("Pls.' 2d Mot. to Am.

and Supp. Compl."), ECF No. 108[2]; (5) the Plaintiffs' Request for Judicial Notice or in the

Alternative for Admitting Into Evidence in Support of Supplemental Memorandum ("Pls.' Req.

for Judicial Notice"), ECF No. 115; and (6) the Intervenor Plaintiff's Request for Status

---

(. . . continued)

with Rule 8(a)" because he made "no mention of [the District of Columbia Department of Human Services ('DHS')]
in the complaint other than to list it in the case's caption" and because "there [were] no facts alleged concerning
DHS's discriminatory activity").

[2] The Plaintiffs' Motion to Amend and Supplement Complaint "renew[s], albeit in a larger format [the Plaintiffs'
Motion to File Supplemental Complaint Under Rule 15(d)], with more details and additional facts that took place
after 2011."  Pls.' 2d Mot. to Am. and Supp. Compl. at 3.

Conference ("Int. Pl.'s Req. for Hr'g"), ECF No. 141.[3]  Upon consideration of the parties' submissions,[4] the Court concludes that it must (1) grant Turan Nevada's motion to dismiss the complaint for lack of subject-matter jurisdiction, (2) deny as futile the plaintiffs' first motion to file a supplemental complaint and the plaintiffs' second motion to amend and supplement the Complaint, and (3) deny as moot the plaintiffs' motion to consolidate the Court's consideration

---

[3] Also pending for the Court's resolution are the following motions: (1) the Plaintiffs' Motion to Supplement Evidence with Decisions of Supreme Court of Kazakhstan of August 20, 2015 Re. Plaintiffs' Supplemental Memorandum of June 12, 2015, Dkt[.] #114 ("Pls.' 1st Mot. to Suppl."), ECF No. 122; (2) the Plaintiffs' Supplemental Motion to Supplement Evidence with Decisions of Appellate Court of Kazakhstan Dated September 23 and November 10, 2015 Re. Plaintiffs' Supplemental Memorandum of June 12, 2015, Dkt[.] #114 ("Pls.' 2d Mot. to Suppl."), ECF No. 126; (3) the Plaintiffs' Supplemental Motion to Supplement Evidence with Decisions of Supreme Court of Kazakhstan Dated February 15, March 16, April 4[,] and April 13, 2016 Re. Plaintiffs' Supplemental Memorandum of June 12, 2015, Dkt[.] #114 ("Pls.' 3d Mot. to Suppl."), ECF No. 130; and (4) the Plaintiffs' Supplemental Motion to Supplement Evidence on Judicial Proceedings in Kazakhstan Re. Plaintiffs' Supplemental Memorandum of June 12, 2015, Dkt[.] #114 ("Pls.' 4th Mot. to Suppl."), ECF No. 133.  These motions all seek to supplement the Plaintiffs' Supplemental Memorandum in Opposition to the Motions Brought by Turan Petroleum, Inc. (Nevada), for Intervention and to Dismiss ("Pls.' Supp. Resp."), ECF No. 114, with evidence pertaining to judicial proceedings in the Republic of Kazakhstan that are purportedly "dispositive as to the issue of standing of Turan [Nevada]," Pls.' 4th Mot. to Suppl. at 1; see also Pls.' 1st Mot. to Suppl. at 3 ("Turan[ ]Nevada has no legally cognizable standing in this matter and its Motion for Intervention should be finally denied."); Pls.' 2d Mot. to Suppl. at 4 ("Turan[ ]Nevada's Motion to Intervene should be denied because Turan[ ]Nevada's claims and defenses . . . do not belong to this case."); Pls.' 3d Mot. to Suppl. at 6 (same); Pls.' 4th Mot. to Suppl. at 6 (same).  However, because the Court already provisionally granted Turan Nevada's motion to intervene "for the sole purpose of allowing it to file a motion to dismiss," Order at 1 (Aug. 15, 2011), ECF No. 36, the Court denies these motions as moot.  The Court also notes that, regardless of whether Turan Nevada has standing to intervene in this action and raise the issue of whether the Court lacks subject-matter jurisdiction, because the FSIA deprives the Court of subject-matter jurisdiction in the absence of an applicable exception, the Court is "obligated to consider sua sponte" whether it has jurisdiction hear the case.  Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction, may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." (citation omitted)); Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 496 n.5 (1983) ("[E]ven if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine whether immunity is unavailable under the [FSIA].").

[4] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Memorandum in Opposition to the Motion to Dismiss Brought by Turan Petroleum, Inc. (Nevada) ("Pls.' Opp'n"), ECF No. 43; (2) Intervenor Plaintiff Turan Petroleum, Inc.'s Reply in Support of Motion to Dismiss Pursuant to Fed.[ ]R.[ ]Civ.[ ]P. 12(b)(1), 12(b)(3), and 12(b)(6) ("Int. Pl.'s Reply"), ECF No. 45; (3) the Plaintiffs' Surreply to Reply of Turan Petroleum, Inc. (Nevada) Re. Motion To Dismiss ("Pls.' Surreply"), ECF No. 49; (4) Intervenor Plaintiff Turan Petroleum, Inc.'s Response to Plaintiffs' Sur[]reply to Reply of Turan Petroleum Inc. (Nevada) Re. Motion To Dismiss ("Int. Pl.'s Resp."), ECF No. 50; (5) Intervenor Plaintiff Turan Petroleum, Inc.'s Supplemental Response to Plaintiffs' Sur[]reply to Reply of Turan Petroleum Inc. (Nevada) Re. Motion To Dismiss ("Int. Pl.'s Supp. Resp."), ECF No. 57; (6) Intervenor Plaintiff's Response to Plaintiffs' Motion to Amend and Supplement Complaint ("Int. Pl.'s Resp. to Pls.' Mot. to Am."), ECF No. 118; and (7) Intervenor Plaintiff's Supplemental Response to Plaintiff[s'] Supplemental Memorandum in Opposition to the Motions Brought by Turan Petroleum, Inc. (Nevada)[] for Intervention and to Dismiss ("Int. Pl.'s 2d Supp. Resp."), ECF No. 120.

of Turan Nevada's motion to dismiss and the plaintiffs' first motion to file a supplemental

complaint, the plaintiffs' request for judicial notice, and Turan Nevada's request for a hearing.[5]

# I.  BACKGROUND

The following factual allegations are taken from the plaintiffs' Complaint and are

accepted as true for the purposes of resolving Turan Nevada's motion to dismiss as required by

Federal Rule of Civil Procedure 12(b)(1).

After gaining independence in 1992, the Republic of Kazakhstan ("Kazakhstan") sought

investments from foreign sources into its economy.  See Compl. ¶ 13.  As part of this endeavor,

Kazakhstan offered "western investors concessions for exploration of oil and gas reserves,"

which entitled investors "to explore the subsurface reserves[] [and] to produce . . . and [ ]export

the oil and gas products extracted within the concession territories."  Id. ¶ 16.  "In the course of

that promotional campaign to attract western investments, the Ministry made various public

offers and announced biddings for those oil and gas concessions."  Id. ¶ 18.  At issue in this case

is the Ministry's repudiation of two agreements, which the parties refer to as the Aral and Arys

concessions.  See id. ¶ 23.

In 2001, the Ministry solicited bids "for the exploration and development of the oil and

gas resources" located in the Kyzlorda and Shymkent regions in Kazakhstan.  Id. ¶ 44; see also

id. ¶ 29.  The Aral concession agreement was consummated with Ai Dan LLC ("Ai Dan"), a

Kazakh entity, on June 29, 2002.  See id. ¶ 31.  Later that year, the agreement was amended to

transfer the rights granted under the concession to Kok Aral Munai LLC ("KAM"), a subsidiary

---

[5] The Court regrets that it failed to resolve these motions earlier.  The delay resulted from these motions not
appearing on the Clerk of the Court's list of pending motions after the proceedings in this case were initially stayed
pending settlement discussions.  It was only after this Court devised its own internal system for tracking its own
pending motions that the Court realized that the motions in this case had not been resolved.  Once the Court was
made aware of these unresolved motions, its prior commitments in other cases prevented it from resolving the
motions in this case more expeditiously.

of Ai Dan.  See id. ¶ 32–33.   In 2003, the "Ministry concluded the initial agreement on the Arys

[c]oncession with a Kazakh entity[,] Aral Petroleum LLC."  Id. ¶ 48.

On February 18, 2005, "the Ministry issued an Order, by which it suspended the Aral

[c]oncession for one month, claiming a non-performance by KAM."  Id. ¶ 37.   Thereafter, on

July 5, 2005, "the Ministry issued [ ] Order No. 979, by which it terminated the June 2002

agreement on the Aral [c]oncession altogether."  Id. ¶ 38.   In September 2010, "the Ministry

made a unilateral decision to terminate the Arys [c]oncession."  Id. ¶ 75.

On December 9, 2010, the plaintiffs instituted this civil action.  See id. at 1.   On March

30, 2011, Turan Nevada filed its motion to intervene, see generally Int. Pl.'s Mot., which, as

noted earlier, the Court "provisionally [granted nunc pro tunc] for the sole purpose of allowing it

to file a motion to dismiss."  Order at 1 (Aug. 15, 2011), ECF No. 36 (emphasis in original).   On

August 8, 2011, Turan Nevada filed its motion to dismiss.  See generally Int. Pl.'s Mot.

Thereafter, on November 4, 2011, the plaintiffs requested leave to file a supplemental complaint,

see Pls.' 1st Mot. to Supp. Compl. at 1, and on June 12, 2015, the plaintiffs filed their second

motion to amend and supplement their complaint, see Pls.' 2d Mot. to Am. and Supp. Compl. at

1.  These motions are the subjects of this Memorandum Opinion.

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Federal [district] courts are courts of limited jurisdiction," Kokkonen v. Guardian Life

Ins. Co. of Am., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the court's jurisdiction,'" Morrow v.

United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions,

835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, "the Court is obligated to determine whether it has

subject-matter jurisdiction in the first instance," Curran v. Holder, 626 F. Supp. 2d 30, 32 (D.D.C. 2009), and must dismiss a claim if it "lack[s] [] subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1).

In deciding a motion to dismiss based upon lack of subject-matter jurisdiction, "the [C]ourt need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (alteration in original) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, a "[p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (citation and internal quotation marks omitted); see also Macharia v. United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).

**B.      Motion to Amend Pleadings**

Under Federal Rule of Civil Procedure 15(a), the Court "should freely give leave" to a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). While the Court has sole discretion to grant or deny leave to amend, "[l]eave to amend a [pleading] should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party,

repeated failure to cure deficiencies, or futility." <u>Richardson v. United States</u>, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).  The rationale for this perspective is that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [it] ought to be afforded an opportunity to test [its] claim on the merits." <u>Foman</u>, 371 U.S. at 182.  Nevertheless, the "[C]ourt may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss," i.e., if it is futile to permit the proposed amendment. <u>In re Interbank Funding Corp. Sec. Litig.</u>, 629 F.3d 213, 218 (D.C. Cir. 2010); <u>see also</u> <u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

## III.   ANALYSIS

Turan Nevada argues that this case must be dismissed for lack of subject-matter jurisdiction because "as an agency of a foreign sovereign, the "[M]inistry is immune from suit under the . . . []FSIA[]," and that "allegations of [the p]laintiffs' Complaint are insufficient . . . to establish that any of the exceptions to immunity under the FSIA applies." Int. Pl.'s Mot. at 2 (emphasis removed).[6]  Turan Nevada also claims that the allegations in the plaintiffs' proposed amended pleadings "are insufficient to confer subject-matter jurisdiction upon [ ] this Court." Int. Pl.'s Resp. to Pls.' Mot. to Am. at 7.  The Court will address each in turn.

---

[6] Turan Nevada also argues that the Complaint fails to state a claim upon which relief can be granted because "each and every one of [the p]laintiffs' claims requires this Court to adjudicate the legality or illegality of official acts of a foreign sovereign performed within its own territory," which the "Court is precluded from doing so by the acts of state doctrine[,] which creates a conclusive presumption that the acts of a foreign sovereign within its own territory are valid." Int. Pl.'s Mot. at 2.  In addition, Turan Nevada argues that the plaintiffs' "claims related to the Aral [c]oncession are time barred," <u>id.</u> at 3, and that "this Court is not the proper venue," <u>id.</u>  However, based on the Court's finding that there is no jurisdictional basis for it to hear this case, which the Court addresses later in this Memorandum Opinion, <u>see</u> Part III.A, <u>infra</u>, the Court need not address these additional arguments supporting dismissal.

## A.     The FSIA

Under the FSIA, a foreign state, its political subdivisions, agencies, and instrumentalities are presumed to be immune from the jurisdiction of the United States courts.  See TMR Energy Ltd. v. State Prop. Fund of Ukr., 411 F.3d 296, 299 (D.C. Cir. 2005) (citing Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993)); see also 28 U.S.C. § 1604; S.K. Innovation, Inc. v. Finpol, 854 F. Supp. 2d 99, 107 (D.D.C. 2012).  The "presumption is overcome only if the plaintiff shows that one of the exceptions to immunity provided in 28 U.S.C. §§ 1605–07 applies." TMR Energy, 411 F.3d at 299.[7]  As Turan Nevada correctly notes, the FSIA "provides the exclusive basis for a court to obtain subject-matter jurisdiction over a foreign state," Int. Pl.'s Resp. to Pls.' Mot. to Am. at 5; see also Nelson, 507 U.S. at 355, and "unless a specific FSIA exception applies, this Court lacks subject-matter jurisdiction to hear the claims asserted by the [p]laintiffs[] because the Ministry is an agency of Kazakhstan, a foreign state," Int. Pl.'s Mot. at 5.[8]  The plaintiffs claim that "[t]he statutory [FSIA] exceptions . . . apply," Compl. ¶ 6, specifically the waiver exception, the commercial activity exception, and the expropriation

---

[7] The Court notes that "[f]oreign defendants challenging a [United States] court's subject[-]matter jurisdiction bear the ultimate burden of proving immunity," Agrocomplect, AD v. Republic of Iraq, 524 F. Supp. 2d 16, 21 n.8 (D.D.C. 2007) (Walton, J.) ((first and third alterations in original) (quoting Idas Resources N.V. v. Empresa Nacional De Diamantes De Angola E.P., Civ. Action No. 06-00570 (ESH), 2006 WL 3060017, at *3 (D.D.C. Oct. 26, 2006)); see also S.K. Innovation, 854 F. Supp. 2d at 107 ("While the ultimate burden of persuasion remains with [the d]efendants, where . . . they can show that [the p]laintiffs' jurisdictional allegations are legally insufficient— that is, taken as true, [the p]laintiffs' factual allegations fail to bring the case within any of the exceptions to immunity . . .—a court properly finds that it lacks subject-matter jurisdiction and must dismiss the case.").  Although the foreign defendant in this case has "fail[ed] to appear," Fritz v. Islamic Republic of Iran, 320 F. Supp. 3d 48, 76 (D.D.C. 2018), such failure does not waive the defense because the Court nevertheless "must satisfy itself that a[] FSIA plaintiff has cleared each of these hurdles," id.

[8] In this case, there is no dispute that the Ministry qualifies as a "foreign state" within the meaning of the Act.  See Compl. ¶ 4 (alleging that the Ministry "is a government agency of the Republic of Kazakhstan"); Int. Pl.'s Mot. at 4 n.1 (same); see also 28 U.S.C. § 1603(a)–(b) (defining the term "foreign state" to include "an agency or instrumentality of a foreign state").  Therefore, the Court will only address whether a specific exception under § 1605 applies in order for this Court to have subject-matter jurisdiction over plaintiffs' claims against the Ministry.

exception, see id.  The Court will address in turn each of the statutory exceptions to jurisdictional immunity of a foreign state asserted by the plaintiffs.

## 1. The Waiver Exception

The plaintiffs allege that this Court has subject-matter jurisdiction because the Ministry waived its sovereign immunity.  See id.  Specifically, the plaintiffs assert that "[t]o the extent that the Ministry promoted the oil and gas concessions on the international markets and agreed to the participation of . . . American corporations as parents to the local entities holding the rights under the concessions, the 'waiver' exception [] applies."  Id. ¶ 80.  According to the plaintiffs, pursuant to local regulations, the Ministry of Justice of Kazakhstan (the "Ministry of Justice") may register a foreign parent holding entity as the beneficial holder of the rights under a concession only after determining that Kazakhstan does not have an "interest to take over the rights of a foreign parent entity," thereby "declin[ing] to exercise its right of the first recusal." Id. ¶ 81.  The plaintiffs claim that "[w]hen the Ministry of Justice declined to consummate [Kazakhstan's] right of the first refusal and registered the American parent entity, it exercised the express 'waiver,' within the meaning of § 1605 of the FSIA.[9]  Id.  The Court agrees with Turan Nevada, however, that "the[se] allegations . . . do not demonstrate an express or implied waiver of immunity by the Ministry."  Int. Pl.'s Mot. at 7.

---

[9] It is unclear to the Court whether the plaintiffs are asserting that express or implied waiver, or both, applies to their claims.  While the plaintiffs allege that the Ministry and Kazakhstan "exercised the express 'waiver'" in one instance in the Complaint, see Compl. ¶ 81, they also assert application of the waiver exception more broadly, see id. ¶ 6 ("[T]he 'waiver' exception applies to the facts herewith."); see also id. ¶ 80 ("To the extent that the Ministry promoted the oil and gas concessions on the international markets and agreed to the participation of . . . American corporations as parents to the local entities holding the rights under the concessions, the 'waiver' exception also applies."), and do not specifically mention the application of an implicit waiver, see generally id.  However, regardless of whether the plaintiffs intended to argue that an express or implied waiver applies, for the reasons discussed infra, see Part III.A.1, the Court finds that the plaintiffs have not met their burden to demonstrate that either type of waiver applies.

Section 1605(a)(1) of the FSIA provides that "[a] foreign state shall not be immune from the jurisdiction of United States courts in any case . . . in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  Generally, "explicit waivers of sovereign immunity are narrowly construed in favor of the sovereign' and are not enlarged 'beyond what the language requires.'"  World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 1162 (D.C. Cir. 2002) (quoting Library of Cong. v. Shaw, 478 U.S. 310, 318 (1986)).  Thus, "[a] foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so."  Id.; see Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1292 (11th Cir. 1999) ("An express waiver under [S]ection 1605(a)(1) must give a clear, complete, unambiguous, and unmistakable manifestation of the sovereign's intent to waive its immunity.").  The foreign state must "expressly consent[]—for example, in the text of a treaty or a contract—to forgo its immunities with regard to a certain class of disputes or a particular subject matter."  Ashraf-Hassan v. Embassy of Fr. in the U.S., 40 F. Supp. 3d 94, 99 (D.D.C. 2014).

Implied waivers are also "construed narrowly and require[] clear evidence of the foreign sovereign's intention to dispense with its immunity."  Id. (citation omitted) (citing Creighton Ltd. v. Gov't of the State of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999)).  In fact, this Circuit has "found an implicit waiver of sovereign immunity in only three situations."  Gutch v. Federal Republic of Germany, 255 F. App'x 524, 525 (D.C. Cir. 2007) (citing World Wide Minerals, 296 F.3d at 1161 n.11); see Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990)) ("The legislative history of [the] FSIA gives three examples of circumstances in which courts have found implied waivers: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country governs a

contract; or (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity.").  Specifically, courts have found that a foreign sovereign has implicitly waived the defense of immunity if the sovereign has (1) "filed a responsive pleading without raising the defense of sovereign immunity," World Wide Minerals, 296 F.3d at 1161 n.11; (2) "agreed to arbitrate," id.; or (3) agreed "to adopt a particular choice of law," id.  These examples "demonstrate that the theory of implied waiver contains an intentionality requirement," Odhiambo v. Republic of Kenya, 930 F. Supp. 2d 17, 24 (D.D.C. 2013), and that an implied waiver "in particular 'depends upon the foreign government's having at some point indicated its amenability to suit,'" Strange v. Islamic Republic of Iran, 320 F. Supp. 3d 92, 98 (D.D.C. 2018) (quoting Princz v. Federal Republic of Germany, 26 F.3d 1166, 1174 (D.C. Cir. 1994)).

In this case, the plaintiffs' allegations fail to establish that the Ministry expressly or implicitly consented to waiving its immunity.  "[P]romot[ing] the oil and gas concessions on the international markets and agree[ing] to the participation of . . . American corporations as parents to the local entities holding the rights under the concessions," Compl.  ¶ 80, and "register[ing] the American parent entity" as the beneficial holder of the rights under a concession, id. ¶ 81, do not amount to an explicit waiver of immunity because it cannot be said that these actions "clearly and unambiguously" express the Ministry's intent to waive its immunity, accord Gutch, 255 F. App'x at 525 (holding that "Germany's unconditional surrender [at the end of World War II] made no mention of waiver of German sovereign immunity in the courts of the United States").  But see World Wide Minerals, 296 F.3d at 1162 & n.13 (finding that "[t]here is no question that Kazakhstan clearly indicated its intent to waive its immunity" in two of its agreements, which stated that Kazakhstan "hereby irrevocably waives . . . immunity for itself" (second alteration in original)).

Moreover, even if these actions were construed as an implied waiver, the Court finds that the Ministry did not implicitly waive its immunity.  First, on the record in this case, the Court finds that an implied waiver based on a foreign sovereign's filing of a responsive pleading without contesting jurisdiction by asserting its sovereign immunity is inapplicable in this case. The Ministry—or any other entity on behalf of Kazakhstan—has not made an appearance in this case or filed any pleading in response to the plaintiffs' claims.  Therefore, Kazakhstan has not made the requisite "'conscious decision to take part in the litigation.'"  Ashraf-Hassan, 40 F. Supp. 3d at 101 (quoting Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990)).   Second, the Ministry's actions did not amount to an implicit waiver, as none of the Ministry's actions, see Compl. ¶¶ 80, 81, fall within the other two examples this Circuit has recognized as amounting to an implied waiver of sovereign immunity, cf. Foremost-McKesson, 905 F.2d at 444.

Notably, the plaintiffs do not claim that Kazakhstan waived its sovereign immunity—either explicitly or implicitly—in any treaty, legislation, or contract entered into by Kazakhstan. Even if the plaintiffs sought to rely on (1) the Bilateral Investment Treaty, see Compl. ¶ 14; (2) the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States ("Convention on Settlement of Investment Disputes"), see id. ¶ 15; (3) the Foreign Investment Law, see id. ¶ 17; (4) the Act on Use of Subsurface Resources in 1996, see id. ¶ 21; or (5) the Arys and Aral concession agreements, see id. ¶¶ 31, 48, to demonstrate that Kazakhstan waived its immunity, the plaintiffs nevertheless would fail to satisfy their burden of showing that the waiver exception applies, see Owens v. Republic of Sudan, 864 F.3d 751, 784 (D.C. Cir. 2017) ("The plaintiff bears an initial burden of production to show an exception to immunity . . . applies.").

As an initial matter, the Court notes that the plaintiffs have not produced and the Court has been unable to locate through independent research the Act on Use of Subsurface Resources or the Aral concession agreement, and as the party bearing the burden of production, the plaintiffs have failed to carry their burden of showing how either confers subject-matter jurisdiction on this Court.  Additionally, with respect to the Bilateral Investment Treaty, as another member of this Court has held, the "Treaty's terms do not support a waiver" of Kazakhstan's sovereign immunity.[10]  S.K. Innovation, 854 F. Supp. 2d at 114.  Moreover, the Court has been unable to locate language in the Foreign Investments Act or the Arys concession agreement that could amount to either an express or implied waiver of immunity to suit in United States courts.  However, the Court notes that even if the Ministry had impliedly waived its sovereign immunity in the Arys concession agreement through a choice of law or arbitration provision, "a contractual waiver of immunity does not apply to third parties who are not privy to the contract," Heroth v. Kingdom of Saudi Arabia, 565 F. Supp. 2d 59, 65 (D.D.C. 2008), and because, as Turan Nevada correctly notes, the "[p]laintiffs do not allege that they are in privity to the concession agreements, any potential waiver of immunity arising from [] those agreements would not apply to them," Int. Pl.'s Mot. at 7.

Moreover, the mere fact that Kazakhstan is a signatory to the Convention on Settlement of Investment Disputes does not permit the plaintiffs' suit.  Accord Odhiambo v. Republic of

---

[10] In their Complaint, the plaintiffs allege that "Kazakhstan's obligations under th[e] [Bilateral Investment] Treaty have been disregarded by the Ministry in this particular manner, within the meaning of 28 U.S.C. §[ ]1605." Compl. ¶ 9.  Furthermore, they argue that the Bilateral Investment Treaty and the Letter of Transmittal of the Bilateral Investment Treaty by the White House to the Senate "do[] not cut off any rights of an investor to sue in a domestic court." See Pl.s' Opp'n at 14–15.  Although the essence of the plaintiffs' argument is not entirely clear to the Court, to the extent that they are claiming that the Ministry is not immune from being sued in the United States pursuant to § 1604 of the FSIA, which states that "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act[,] a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [§§] 1605 to 1607 of this chapter," 28 U.S.C. § 1604, the Court finds that the Bilateral Investment Treaty "cannot form the basis of an FSIA exemption under § 1604." S.K. Innovation, 854 F. Supp. 2d at 114 (finding that because the Bilateral Investment Treaty was not "in existence 'at the time of enactment' of the FSIA," the exemption to immunity articulated in § 1604 was "clearly inapplicable").

Kenya, 764 F.3d 31, 35 (D.C. Cir. 2014) ("Indeed, the Supreme Court has explained that it

cannot 'see how a foreign state can waive its immunity under § 1605(a)(1) by signing an

international agreement that contains no mention of a waiver of immunity to suit in United States

courts.'" (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442

(1989)).  And, although the plaintiffs claim that the Convention on Settlement of Investment

Disputes "did not abrogate any rights of investors," Pl.s' Opp'n at 15, they do not identify any

language in the Convention on Settlement of Investment Disputes that either explicitly or

implicitly waives Kazakhstan's sovereign immunity.  The plaintiffs reference the Preamble of

the Convention on Settlement of Investment Disputes, which states, "[r]ecognizing that while

such disputes would usually be subject to national legal processes, international methods of

settlement may be appropriate in certain cases," and "[a]ttaching particular importance to the

availability of facilities for international conciliation or arbitration to which Contracting States

and nationals of other Contracting States may submit such disputes if they so desire," Pl.s'

Opp'n at 16; however, this language does not amount to an explicit waiver of Kazakhstan's

sovereign immunity.  Furthermore, courts have held that a signatory to the Convention on

Settlement of Investment Disputes will be subject to suit in the United States, pursuant to the

implied waiver exception under § 1605(a)(1), and would not be entitled to immunity, only in

cases seeking enforcement of arbitration awards obtained pursuant to the Convention on

Settlement of Investment Disputes.  See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of

Venezuela, 863 F.3d 96, 113 (2d Cir. 2017); Blue Ridge Invs., L.L.C. v. Republic of Argentina,

735 F.3d 72, 85 (2d Cir. 2013) (finding that the foreign sovereign was not immune from suit

seeking to enforce an arbitration award issued pursuant to the Convention on Settlement of

Investment Disputes under the implied waiver exception of the FSIA); Cont'l Cas. Co. v.

Argentine Republic, 893 F. Supp. 2d 747, 751 (E.D. Va. 2012) ("[C]ourts recognized that a foreign state's entering into the ICSID Convention waived foreign sovereign immunity [with respect to the enforcement of any arbitration award entered pursuant to the Convention.").[11] However, because the plaintiffs in this case are not seeking to enforce an arbitration award issued pursuant to the Convention on Settlement of Investment Disputes, the Court cannot conclude that Kazakhstan has waived its immunity under the implied waiver exception of the FSIA by merely being a signatory to the Convention on Settlement of Investment Disputes.

For all of these reasons, the Court finds that the plaintiffs have not shown that the Ministry explicitly or implicitly waived its sovereign immunity pursuant to § 1605(a)(1) of the FSIA.

## 2.   The Commercial Activity Exception

The plaintiffs also allege that this Court has subject-matter jurisdiction over their claims pursuant to the FSIA's commercial activity exception.  See Compl.  ¶¶ 6, 79.  Turan Nevada responds that because "all of the claims are based upon, and the alleged damages arise from, the Ministry granting to Kazakh entities and subsequently terminating two concessions to explore for, develop[,] and produce oil and gas within the territorial boundaries of Kazakhstan," Int. Pl.'s Mot. at 8, and because "authorizing the exploration, development[,] and production of state-owned natural resources is not a power that can be exercised by private citizens," id. at 9, but

---

[11] These cases also held that "actions to enforce [] awards [obtained pursuant to the Convention on Settlement of Investment Disputes] rendered against foreign sovereigns fall neatly into the FSIA's specific exemptions from immunity under [the arbitral award exception of § 1605(a)(6)(B)]."  Mobil Cerro Negro, 863 F.3d at 113; see Blue Ridge, 735 F.3d at 84; Cont'l Cas. Co., 893 F. Supp. 2d at 751 ("Nor, as several courts have noted, is there any doubt that [Convention on Settlement of Investment Disputes] arbitral awards fall within this immunity exception."); see also Tidewater Inv. SRL v. Bolivarian Republic of Venezuela, Civ. Action No. 17-1457 (TJK), 2018 WL 6605633, at *4 (D.D.C. Dec. 17, 2018) ("The Court has little trouble concluding, pursuant to the arbitral award exception, that Venezuela is not entitled to immunity in this action."); Funnekotter v. Republic of Zimbabwe, Civ. Action No. 09-8168 (CM), 2011 WL 666227, at *2 (S.D.N.Y. Feb. 10, 2011) ("Here, the immunity exception in [§] 1605(a)(6)(B) applies because the Netherlands, Zimbabwe, and the United States are signatories to the Convention on the Settlement of Investment Disputes and [the] arbitration award was obtained pursuant to that treaty.").

rather is "a quintessential sovereign act," id., the plaintiffs' allegations do not demonstrate that

the Ministry engaged in commercial activity, which is necessary for the exception to apply, see

id.  The Court agrees with Turan Nevada that the commercial activity exception does not apply.

Section 1605(a)(2) of the FSIA, otherwise referred to as the commercial activity

exception, states that

> [a] foreign state shall not be immune from the jurisdiction of courts of the United
> States . . . in which the action is based . . . upon an act outside the territory of the
> United States in connection with a commercial activity of the foreign state
> elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).  In determining whether an act qualifies as commercial, a court must

"look[] to the character of the foreign state's exercise of power rather than its effects."  Rong v.

Liaoning Province Gov't, 452 F.3d 883, 888 (D.C. Cir. 2006); see also Nelson, 507 U.S. at 350

(finding that a foreign state engages in commercial activity if it exercises "only those powers that

can also be exercised by private citizens" as opposed to those "powers peculiar to sovereigns");

Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614 (1992) ("[T]he issue is whether the

government's particular actions (whatever the motive behind them) are the type of actions by

which a private party engages in trade or traffic or commerce." (internal quotation marks

omitted)).  "The commercial character of an activity shall be determined by reference to the

nature of the course of conduct or particular transaction or act, rather than by reference to its

purpose."  28 U.S.C. § 1603(d).  "A useful inquiry in pursuing this refinement is whether the

essence or central elements of an agreement made by a foreign state 'might be made by a private

person.'"  Millen Indus., Inc. v. Coordination Council for N. Am. Affairs, 855 F.2d 879, 884

(D.C. Cir. 1988) (internal quotation marks omitted) (quoting Practical Concepts, Inc. v. Republic

of Bolivia, 811 F.2d 1543, 1549 (D.C. Cir. 1987)).

Here, the plaintiffs fail to allege sufficient facts showing that the Ministry engaged in any commercial activity. The plaintiffs argue that the Ministry "ha[s] undertaken very substantial commercial activities in the [United States]." Pl.s' Opp'n at 9.[12] Specifically, the plaintiffs claim that "the Vice Minister of Oil and Gas was the keynote speaker at [a] Kazakhstan-[United States] Investment Forum, held in New York," id. at 9–10, and that this presentation "shows that [the Ministry] has been actively seeking investments in the [United States]," id. at 10. Furthermore, the plaintiffs claim that the "the Embassy of Kazakhstan in Washington[,] D.C. has been vigorously seeking the American investments in the Kazakh oil sector," id., and that the Ministry has purchased "American expertise (Honeywell-UOP) in the evaluation of the oil deposits," id., "has sought and obtained a syndicated $1 billion term loan facility, using Bank of America-Merr[i]ll Lynch as the lead arranger," id., and "has been successful [in] attract[ing] the American oil companies, such as Chevron, Mobil[][,] and Exxon, ultimately for the total of $11 billion," id. However, none of these actions—regardless of whether they constitute commercial activities—form the basis of the plaintiffs' claims because the plaintiffs' claims are based upon the repudiation of the Aral and Arys concession agreements, which pertain to the exploration and development of Kazakhstan's oil and gas resources, see Compl. ¶¶ 23, 29, 44—acts that this Circuit has consistently held are "sovereign prerogative[s]," World Wide Minerals, 296 F.3d at 1165 (quoting Millen Indus., 855 F.2d at 885); see id. (finding that "issuance of a license permitting the removal of uranium from Kazakhstan is a sovereign act"); cf. Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic, 877 F.2d 574, 578 (7th Cir. 1989) (finding that "a

---

[12] The plaintiffs also argue that the requirement that the commercial activity have a direct effect in the United States "is easily demonstrated here, as the American plaintiffs underwent unwarranted losses that were not compensated, whereas there was even no public purpose for such a taking." Pl.s' Opp. at 10. However, because the Court finds that the Ministry did not engage in a commercial activity necessary to the plaintiffs' claims, the Court need not address whether the Ministry's challenged activity caused a direct effect in the United States.

contract whereby a foreign state grants a private party a license to exploit the state's natural resources is <u>not</u> a commercial activity [under the FSIA], since natural resources, to the extent they are 'affected with the public interest,' are goods in which only the sovereign may deal"); <u>MOL, Inc. v. Peoples Republic of Bangladesh</u>, 736 F.2d 1326, 1329 (9th Cir. 1984) (finding that the commercial activity exception did not apply because "Bangladesh was terminating an agreement that only a sovereign could have made" given that the agreement "concerned Bangladesh's right to regulate imports and exports, a sovereign prerogative" and its "right to regulate its natural resources, also a uniquely sovereign function'"). Therefore, the "commercial activity exception has no applicability [in this case because] the alleged commercial activity is unnecessary to the plaintiff[s'] claim[s]." <u>Kirkham v. Societe Air Fr.</u>, 429 F.3d 288, 292 (D.C. Cir. 2005) (citing <u>Nelson</u>, 507 U.S. at 358); <u>Millen Indus.</u>, 855 F.2d at 885 ("Even if a transaction is partly commercial, jurisdiction will not obtain if the cause of action is based on a sovereign activity."). Instead, because "the [plaintiffs'] causes of action are based on promises, breaches of promises, and other allegedly actionable conduct involving" Kazakhstan's oil and gas resources, "these would plainly be sovereign aspects of the transaction over which [this Court] lack[s] jurisdiction." <u>Millen Indus.</u>, 855 F.2d at 885. Thus, the Court finds that the plaintiffs have not pleaded sufficient allegations showing that the commercial activity exception abrogates the Ministry's immunity in this case.

### 3. The Expropriation Exception

The plaintiffs also claim that this Court has subject-matter jurisdiction pursuant to the expropriation exception of the FSIA. <u>See</u> Compl. ¶¶ 6, 83. They argue that "[a]t the center of the present case, there are the allegations of confiscation of the very substantial assets related to the oil exploration, which did cause considerable damages in the [United States]." Pls.' Opp'n at 7. Turan Nevada, on the other hand, argues that "like the commercial activity exception, the

expropriation exception requires that the foreign state engage in a commercial activity," Int. Pl.'s

Mot. at 10, and "the Ministry does not engage in a commercial activity within the meaning of the

FSIA when it grants or terminates concessions to explore for, develop[,] and produce oil and gas

within the territorial boundaries of Kazakhstan," id.  The Court agrees with Turan Nevada and

finds that "[a]s with § 1605(a)(2), the application of the expropriation exception fails because

[the p]laintiffs have not alleged that [the Ministry] . . . [is] engaged in commercial activity."

S.K. Innovation, 854 F. Supp. 2d at 113.

> Under the expropriation exception of the FSIA,
>
> [a] foreign state shall not be immune from the jurisdiction of courts in the United States, . . . in any case . . . in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. §1605(a)(3) (emphasis added).  "For the [expropriation] exception to apply, therefore,

the [C]ourt must find that: (1) 'rights in property are at issue;' (2) 'those rights were taken in

violation of international law;' and (3) 'a jurisdictional nexus [exists] between the expropriation

and the United States.'" Nemariam v. Federal Democratic Republic of Ethiopia, 491 F.3d 470,

475 (D.C. Cir. 2007) (third alteration in original) (emphasis added) (quoting Peterson v. Royal

Kingdom of Saudi Arabia, 332 F. Supp. 2d 189, 196–97 (D.D.C. 2004), aff'd, 416 F.3d 83 (D.C.

Cir. 2005)); see also Simon v. Republic of Hungary, 812 F.3d 127, 140 (D.C. Cir. 2016).  The

required

> jurisdictional nexus is established if: (a) the property "is present in the United States in connection with a commercial activity carried on in the United States by the foreign state" or (b) the property "is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States."

Nemariam, 491 F.3d at 475 (emphasis added) (internal quotation marks omitted) (quoting

Peterson, 332 F. Supp. 2d at 197–98).

Here, the plaintiffs fail to address the jurisdictional nexus requirement of the

expropriation exception, see Pl.s' Opp'n at 8–9, but rather merely contend that the Court "must

also find the existence of a jurisdictional nexus between the expropriation and the United States"

without offering any argument in support of their position, id.  The plaintiffs instead focus on

whether the taking violated international law, see id. at 7–8, and even contend that Turan Nevada

"fails to show how the application of the 'takings' exception to the FSIA does not apply here,

since the 'taking' deprived an investor of property without compensation," id. at 9.  However,

the Court need not address whether the taking violated international law because, as discussed

supra, see Part III.A.2, the plaintiffs have failed to establish the exception's third requirement—

that the Ministry engaged in commercial activity.  Accordingly, the plaintiffs have not

sufficiently pleaded that the Ministry engaged in a commercial activity, and therefore, the Court

finds that the plaintiffs have failed to show that the expropriation exception applies.

Because the plaintiffs have failed to establish that any of the claimed exceptions of the

FSIA apply, the Court concludes that it lacks subject-matter jurisdiction over the plaintiffs'

claims against the Ministry.

**B.    Motions to Amend**

The plaintiffs claim that the "[p]roposed [a]mend[ment] and [s]upplemental [p]leading

. . . [r]ender[] [Turan[ ]Nevada's] [m]otion to [d]ismiss [m]oot." Pls.' Supp. Resp. at 8.  Their

proposed pleadings seek to add additional claims, including claims of fraud and civil conspiracy,

as well as a cause of action under the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 (2018).  See Pls.' 1st Mot. to Supp. Compl., Exhibit ("Ex.") 1

(Supplemental Complaint for Damages) ¶¶ 35–46, 52–64, ECF No. 55-1 ("Supp. Compl."); Pls.'
2d Mot. to Am. and Supp. Compl., Ex. 1 (Amended and Supplemental Complaint) ¶¶ 118–136,
164–170, 180–184, ECF No. 108-1 ("Am. and Supp. Compl.").  However, because the plaintiffs'
proposed pleadings do not allege any additional bases upon which the Court could exercise
subject-matter jurisdiction over the plaintiffs' claims against the Ministry, including the claims
asserted in their proposed amendment and supplemental pleading, the Court must deny the
plaintiffs' motions to amend the Complaint as futile.

As in support of their assertion that "RICO [c]laims [d]eprive [f]oreign [s]overeigns [o]ut
of FSIA [d]efenses," Pls.' Supp. Resp. at 10, the plaintiffs cite to a number of cases to no avail,
see id. at 11 (citing Southway v. Cent. Bank of Nigeria, 198 F.3d 1210, 1214 (10th Cir. 1999);
Republic of the Philippines v. Marcos, 862 F.2d 1355, 1358 (9th Cir. 1988); Chalabi v.
Hashemite Kingdom of Jordan, 503 F. Supp. 2d 267, 273 (D.D.C. 2007), aff'd, 543 F.3d 725
(D.C. Cir. 2008); Rux v. Republic of Sudan, 495 F. Supp. 2d 541, 554 (E.D. Va. 2007); Am.
Bonded Warehouse Corp. v. Compagnie Nationale Air Fr., 653 F. Supp. 861, 863 (N.D. Ill.
1987)).  The courts, in some of these cases, allowed the RICO claims to proceed only after
finding that an exception to the FSIA applied.  See Southway, 198 F.3d at 1218 ("Accordingly,
we hold that the FSIA confers subject-matter jurisdiction upon the district court over civil RICO
claims against foreign states, their agencies, and instrumentalities, provided that the commercial
activity exception, or another exception contained in §§ 1605–07 of the FSIA[,] applies.");
Chalabi, 503 F. Supp. 2d at 273 ("Thus, accepting the factual allegations as true, the complaint
asserts facts sufficient to confer subject-matter and personal jurisdiction over the [d]efendants
under the commercial activity exception to the Act."); Am. Bonded Warehouse Corp., 653 F.
Supp. at 864 ("In the instant case, the complaint alleges that defendants implemented a scheme

to eliminate its competition in the freight forwarding industry in violation of RICO.  Such

allegations clearly set forth a cause of action based on commercial activity conducted by the

defendants.  Therefore, defendants are not entitled to jurisdictional immunity under the FSIA.").

And, the remaining cases cited by the plaintiffs are inapposite.  See Rux, 495 F. Supp. 2d at 554

(finding that the court had subject-matter jurisdiction over the plaintiffs' claims pursuant to the

terrorist exception of § 1605(a)(7) of the FSIA in case where no RICO claims were pleaded);

Marcos, 862 F.2d at 1358 (finding that the complaint "sufficiently allege[d] a RICO offense"

against the former president of the Republic of the Philippines, a situation where the FSIA did

not apply).

Here, as already concluded, the plaintiffs have not alleged additional facts from which the

Court could find that the Ministry engaged in a commercial activity or that another FSIA

exception otherwise applies.  In fact, the plaintiffs' additional claims, including their RICO

claim, arises out of an "extension and reallocation of the Arys [c]oncession," Supp. Compl. ¶ 45;

see id. ¶ 38, 55; see also Am. and Supp. Compl. ¶¶ 121, 123, 167, 183, which this Court has

already concluded, in Part III.A.2. of this Memorandum Opinion, supra, are "sovereign

prerogative[s]," Millen Indus., 855 F.2d at 885.  Accordingly, because the plaintiffs' proposed

pleadings do not cure the jurisdictional deficiencies and therefore granting them would be futile,

see Tunica-Biloxi Tribe of La. v. United States, 655 F. Supp. 2d 62, 65–66 (D.D.C. 2009)

(Walton, J.) (stating that "motions to amend under Rule 15(a) may be denied where there is some

apparent or declared reason for doing so, such as the futility of [the] amendment i.e., when the

proposed pleading would not survive a motion to dismiss" (alteration in original) (original

citations and internal quotation marks omitted)), the Court must deny the plaintiffs' motions to

amend or supplement their Complaint.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that none of the claimed exceptions of the Foreign Sovereign Immunities Act apply in this case.  The Court further concludes that permitting the plaintiffs to amend their Complaint would be futile because the plaintiffs' proposed pleadings do not cure the jurisdictional deficiencies.  Accordingly, the Court must (1) grant Turan Nevada's motion to dismiss the Complaint for lack of subject-matter jurisdiction, (2) deny the plaintiffs' first motion to file a supplemental complaint and the plaintiffs' second motion to amend and supplement the Complaint, (3) deny as moot the plaintiffs' motion to consolidate the Court's consideration of Turan Nevada's motion to dismiss and the plaintiffs' first motion to file a supplemental complaint, the plaintiffs' request for judicial notice, and Turan Nevada's request for a hearing, and (4) dismiss this case.

**SO ORDERED** this 26th day of April, 2019.[13]

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.